IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | |
|---|---|
| JEFFERY D. TURNER, | * |
| | * |
| Plaintiff, | * |
| | * |
| vs. | *   No. 4:10CV00746 SWW |
| | * |
| ARKANSAS CHILDREN'S HOSPITAL, | * |
| | * |
| Defendant. | * |

**Memorandum Opinion and Order**

Before the Court is defendant's motion for summary judgment to which plaintiff responded. Defendant filed a reply. For the reasons stated below, the motion is granted.

**Background**[1]

ACH is a pediatric hospital located on over twenty-six blocks in downtown Little Rock. At any given time, there are an estimated 4,000 to 5,000 people on its campus. ACH employs a security staff of over fifty people to protect the patients, visitors, and employees, as well as the property of ACH. The security department is staffed by three shifts and operates "24/7." The security officers are commissioned as private security officers by the Arkansas State Police in accordance with Ark. Code Ann. § 17-40-101 to -353. Every employee who is designated a Security Officer II or higher carries a firearm.

Plaintiff Jeffrey D. Turner ("Turner") was employed by ACH as a security officer from September 26, 1988, until September 18, 2009, when he was discharged for failing to pass the firearms qualifying test. ACH hired Jamie Holt in 2007 to be the Director of Security Services.

---

[1]Much of the background information is taken from the parties' statements of undisputed facts. *See* Doc. Nos. 12 & 14.

Danny O'Kelley is the Assistant Director of Security Services. Prior to Holt's hiring, ACH decided to improve the capability of its security staff by working with employee health, hiring a consultant, and examining the best practices of other law enforcement and security staffs locally and nationally. Holt continued to improve the overall capability and performance of Security Services, and part of the process was to develop a mandatory six-week Officer Academy ("Academy") for all security officers and new recruits. Turner was one of the last two existing security officers to attend.

Turner attended the Academy in August of 2009. He and one other officer, Mike Woodall, a white male, failed to pass the firearms proficiency test during the same Academy. On August 14, 2009, Holt and O'Kelley met with Turner and Woodall and told them that they could not continue as security officers because they failed the firearms test. Both were allowed 30 days to find other employment within the hospital. ACH made it clear that it was up to them to work with human resources to find another job if they wanted to continue working at the hospital; they would not be offered a job. Turner did not find another job,[2] and he told O'Kelley his separation notice should say that he was terminated.

Turner filed a charge of discrimination with the Equal Employment Opportunity Commission on October 2, 2009, alleging race and age discrimination. The notice of right to sue letter was dated March 30, 2010, and the federal complaint was filed on June 29, 2010. Turner brings his claim for race discrimination[3] pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. and 42 U.S.C. § 1981. ACH moves for summary judgment, arguing Turner

---

[2] Turner testified he did not have the education or experience to qualify for any of the positions posted on ACH's website. Doc. 15-1 at 44, ll 7-19.

[3] Plaintiff provides no evidence or argument regarding his age claim; he stated in his deposition that he is no longer pursuing his age discrimination claim. *See* Doc. No. 10-1at 50-51.

cannot establish a *prima facie* case of race discrimination, and even assuming he can, Turner cannot show that the reasons for his discharge were a pretext for race discrimination.

## Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The non-moving party may not rest on mere allegations or denials of her pleading but must "come forward with 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 587 (quoting Fed . R.Civ.P. 56(e)).

"[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v.. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir.1995). The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita,* 475 U.S. at 587 (citations omitted). "Although summary judgment is to be used sparingly in employment discrimination cases, it is appropriate where one party has failed to present evidence sufficient to create a jury question as to an essential element of its claim." *Arnold v. Nursing and Rehab. Ctr. At Good Shepherd, LLC,* 471 F.3d 843, 845-6 (8th Cir.2006)(internal citation omitted).

**Discussion**

Turner alleges he was discriminated against on the basis of race in violation of Title VII and 42 U.S.C. § 1981.[4]  ACH argues his claims fail as a matter of law.

The Court analyzes Turner's claims under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under *McDonnell Douglas*, Turner must first establish a *prima facie* case for racial discrimination.  If Turner is able to establish a *prima facie* case of discrimination, the burden shifts to ACH to produce a legitimate, non-discriminatory reason for the adverse employment action.  *Id.* at 820.  If ACH is able to articulate such a reason, Turner must show that the proffered reason is merely a pretext for unlawful discrimination.  *Id.*

Accordingly, for Turner to state a *prima facie* case of discrimination, he must prove that he (1) is a member of a protected class, (2) was meeting ACH's legitimate job expectations, (3) suffered an adverse employment action, and (4) similarly situated employees outside the protected class were treated differently.  ACH argues Turner cannot establish that he was meeting its legitimate expectations because he concedes that he did not pass the firearms proficiency test.  In response, Turner argues that white security officers who failed to qualify in certain areas were given positions at ACH or were given more than 30 days to find another position at the hospital.  He mentions Richard Foster and Judy Martindale who attended the Academy in January-February 2008.  They are white and failed to qualify with firearms.  Both found jobs in the hospital, Foster in the ACH supply department and Martindale as a patient care technician.  Turner testified Foster and Martindale were both given 60 days to find other jobs and he was given only 30 days.  He said

---

[4]The elements and analysis of a discrimination claim under Title VII and § 1981 are the same. *Saulsberry v. St. Mary's Univ. of Minn.*, 318 F.3d 862, 866 (8th Cir. 2003).

Martindale told him the hospital gave her 60 days to find employment.[5]  According to Rhonda Benton, Director of Employee Relations at ACH, Martindale applied for a position within the 30 days but there was a delay in getting her application to the hiring manager, partly because a human resources employee was out sick.  Under the circumstances, ACH gave Martindale an additional 10 days for the hiring process to be completed.  She was the successful candidate.  Foster's situation was similar in that he applied for a job within the 30-day deadline and was allowed to remain employed for an additional 12 days while the decision on the supply position was made.[6]

      Butch Middleton, a white male, attended the same Academy as Turner.  According to O'Kelley, a medical condition prevented Middleton from completing the Academy.  Once he was restored to full duty, Middleton was required to enroll in and successfully complete the next scheduled Academy.  He passed the Academy in August 2010.[7]  Turner testified that a white male, Bill Eaves, injured his back while at the Academy and took medical leave.  Turner asserts that while on leave, ACH created a position for Eaves and held it for him until he returned from leave.[8]  Turner claims a black man, Cleo Barry, injured his back and could not pass his physical agility test.  Barry was not allowed the opportunity to take the test later, after his back healed.[9]  Turner says Ron Torres, a Hispanic male, could not pass his agility test upon his hiring and was allowed to remain at ACH.[10]  According to O'Kelley, Eaves took medical leave from October 15, 2008,

---

[5]Doc. No. 14-1 at 37-38.

[6]Doc. No. 16-1, Ex. 3 at ¶¶ 5&6.

[7]Doc. No. 10-2 at ¶ 13.

[8]Doc. No. 14-1 at 72-73.

[9]*Id*. at 67-70.

[10]*Id*. at 71-72.

until December 4, 2008. While on leave, a new position (unarmed parking enforcement) was posted. Eaves, along with many others, applied for the position and Eaves was selected. When he returned from leave, he accepted the position which resulted in a reduction in pay.[11] Benton says that Torres was hired officially in the security department on May 18, 2009. In February 2011, he failed the firearms portion of the Academy and was given 30 days to find other employment within the hospital. He did not find employment and was discharged on March 5, 2011.[12]

Maria Nelson is a black female who was hired on July 15, 2008. She began the Academy during her 90-day probationary period but did not fail the firearms portion until Friday, October 17, 2008, her 94th day on the job. She was allowed to resign on October 20, 2008, the first business day after her failed firearms test. Turner argues that because she is black, Nelson was not given 30 days to find other employment. Benton said that because successful completion of the Academy now is a prerequisite for remaining a security officer, Nelson did not successfully complete her probationary period.[13] Sherry Darr is a white security officer who successfully completed the Academy in August 2007. Each armed security officer is required to pass a physical agility test, which is unrelated to the Academy, once a year. Darr hired a personal trainer who was employed at the ACH fitness center after Darr failed the test the first time. The personal trainer certified Darr as having passed the test on her second try.[14] Turner claims that typically O'Kelley watches the officers take their agility tests to see if they pass, and that it was a conflict of interest for Darr's personal trainer to certify she had passed. He also says Darr told him she did not really pass the

---

[11]Doc. No. 10-2 at ¶ 11.

[12]Doc. No. 16-1, Ex.3 at ¶7.

[13]*Id.* at ¶8.

[14]Doc. No. 10 at ¶ 18.

test.[15] Turner admits that Woodall, who failed the firearms test during the same Academy session as Turner, was placed in an unarmed position for 30 days to seek other employment, applied for positions, was not selected, and was discharged.

In addition to arguing that the evidence shows that similarly situated white employees were treated more favorably, Turner argues that statistical data shows that a higher percentage of black security department employees were fired than white employees. He claims that during Holt's administration, which began in 2007, nineteen employees were terminated, and six were black, which constitutes 31.6% of the firings, almost three times their numbers in the workforce. He bases his argument that blacks are over-represented in the number of discharges on the racial makeup of the security department in 2011, which was 88% white, 11% black, and 2% two or more races.[16] There is no evidence, however, of the racial makeup of the department in 2009 when Turner was discharged.[17]

Even assuming Turner meets his initial burden of proving a *prima facie* case, he cannot prevail because there is no evidence of pretext. ACH produced evidence that its actions were based on legitimate non-discriminatory reasons. The burden of proof remains on Turner to establish that his failure to pass the firearms test and failure to find another job in the hospital were a pretext for discrimination. The evidence is that other officers were terminated for failing the

---

[15] Doc. No. 14 at 57-58.

[16] Doc. No. 15-1, Ex. B.

[17] Turner also asserts there is evidence of a pattern of disparate treatment regarding disciplinary actions and firings. Based on a spreadsheet produced by ACH, Turner argues that white security officers are terminated only after compiling a record of disciplinary actions whereas black officers are terminated without having previous disciplinary actions. Turner also contends that Holt does not have rapport with black officers as he does with white officers. ACH convincingly rebuts Turner's argument and attempt to show racial animus with regard to disciplinary actions and firings as evidence that his termination was racially motivated.

firearms proficiency test. And, there is no evidence that other officers who failed the proficiency test were placed in other positions in the hospital. The evidence is that they applied for other positions. Turner admitted he did not apply for any positions because he was not qualified for any of the position that were open.

Because there is no evidence in the record that ACH's reason for terminating Turner's employment was a pretext for intentional discrimination, ACH's motion for summary judgment is granted.

## Conclusion

IT IS THEREFORE ORDERED that defendant's motion for summary judgment [Doc. No. 10] is granted. Judgment will be entered dismissing plaintiff's claims.

DATED this 26th day of August, 2011.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE